UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAWRENCE ARCHER,

        Plaintiff,

v.                                                       Case No.12-10741
                                                         Paul D. Borman
                                                         United States District Judge
CITY OF INKSTER and
BRIAN DENNIS,

        Defendants.

_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. No. 19)

This action arises from two violent disturbances between neighbors which took place on

March 23 and March 24, 2010.  The Amended Complaint in this action was removed to this

Court on February 17, 2012.  (Dkt. No. 1).

Defendants City of Inkster and Brian Dennis' Motion for Summary Judgment is now

before the Court.  (Dkt. No. 19).  Plaintiff Lawrence Archer ("Plaintiff") filed a response to this

motion on July 22, 2013.  (Dkt. No. 25).  Defendants filed their reply on August 9, 2013.  (Dkt.

No. 27).  This Court previously dismissed without prejudice six other defendants in this action

after Plaintiff failed to respond to an order to show cause.  (Dkt. Nos. 4 & 6)

For the reasons set forth below, the Court GRANTS Defendants' Motion for Summary

Judgment.

## I. BACKGROUND

At approximately 3 p.m on March 23, 2010, Plaintiff's grandson, Lorenzo Stevens, and

another boy in the neighborhood, Richard, started fighting near 3616 Farnum Avenue in Inkster,

Michigan. (Defs.' Br., Ex. B, Pl.'s Dep. at 21; Ex. D, Arrest Report 3/23/2010, at 1).[1]  Richard's

sister was also involved in the fight.  (Pl.'s Dep. at 22).  Plaintiff and Richard's mother, Camille

Perry ("Perry") both attempted to intervene in the altercation.  Plaintiff testified that after yelling

at the kids to stop fighting he pulled out a cell phone and called the police twice.  Around the

time Plaintiff was pulling out his cell phone, Perry pulled out a handgun and shot the gun at least

twice into the air.  (Pl.'s Dep. at 22; Arrest Report 3/23/10, at 1).[2]

The Inkster police arrived on the scene after receiving calls about kids fighting and also

calls reporting shots had been fired in the area.  (Arrest Report 3/23/10, at 1).[3]  At the time the

police arrived no one was fighting but the officers were flagged down by Plaintiff who advised

them that his grandson and Richard had been fighting again.  (*Id.*).  Plaintiff also advised officers

that Perry had fired a gun into the air.  (*Id.*).  Officers advised Plaintiff to return to his house after

determining he and Lorenzo were not injured.  (*Id.*).

The officers then went to 3616 Farnum Avenue and spoke with Perry, Richard, and

Perry's mother.  (*Id.*).  Perry advised the officers that Plaintiff's grandson had come down and

started fighting her son, Richard.  (*Id.*).  The officers asked Perry if she had a gun and she

informed the officers that both she and Plaintiff had guns during the incident.  (*Id.*).  Perry then

---

[1] All exhibits referred to are attached to Defendants' brief unless noted otherwise.

[2] Defendants' Exhibit D includes multiple arrest reports as well as follow up reports and crime reports.  Each of these documents is separately paginated, however, for ease of reference the Court will refer to the title of the document and date (of when the information was entered) as well as the page number in reference to the entire exhibit rather than each separate report.

[3] There is nothing in the record indicating that Defendant Dennis was one of the responding officers on March 23, 2010.  (*See* Arrest Report 3/23/2010).  The March 23, 2010 arrest report was drafted by Officer Shawn Kritzer and verified by Thomas Diaz, both of whom were dismissed without prejudice from this action.  Defendant Dennis conducted the follow up investigation on March 24, 2010.  (Ex. D, Follow-Up Report 3/24/2010).

explained to the officers that Plaintiff had come down the street pointing a gun at her son. (*Id*.). Perry also admitted to shooting her gun twice in the air to protect her son. (Arrest Report 3/23/10, at 1). Eventually, Perry produced a Bersa .380 and a Hi-Point .380 and admitted that the Hi-Point was the weapon that she had recently fired. (*Id*.).

Officers also spoke with Perry's son and Perry's mother, Betty Perry. Richard told the police that he and Lorenzo had been fighting and that during the incident he heard people yelling "he's got a gun." (*Id*. at 1-2). Betty Perry advised the officers that she witnessed Plaintiff come out of his house with a black handgun and run towards Lorenzo and Richard while yelling, "get away from him, motherfucker I will kill you." (*Id*. at 2). Betty Perry also told officers that she witnessed Plaintiff pointing a gun at her grandson, Richard. (*Id*.).

Finally, officers interviewed Plaintiff's nephew, Dennis Muhammad, who was present during the altercation. (*Id*. at 2). Muhammad stated that he tried to stop Lorenzo from starting a fight with Richard. (*Id*.). He also advised the officers that he witnessed Perry fire a gun in the air and that "no one else had a gun." (*Id*.).

Perry was arrested for illegal discharge of a weapon and Plaintiff was arrested for felony assault with a handgun and transported to the police station. (Arrest Report 3/23/10, at 1-2). While at the station, Plaintiff testified that he heard Officer Paul Martin release Perry and tell her that she could have her two guns back.[4] (Pl.'s Dep. at 47). Plaintiff testified he was not apprised of his Miranda rights or told why he was being arrested until the next day, March 24, 2010. (*Id.* 47-48). Plaintiff also complained he was only allowed to have his oxygen treatments 15 minutes every hour. (*Id*.).

---

[4] Officer Paul Martin has never been a party to this lawsuit.

3

Defendant Officer Brian Dennis ("Defendant Dennis") conducted the follow-up investigation of the incident the next day.  (*See* Ex. D, Follow-Up Report 3/24/10, at 9-11).  He interviewed and took a witness statement from Dennis Muhammad at the station.  (*Id.* at 10; Pl.'s Br. Ex. 2, Muhammad Witness Statement).  Defendant Dennis then went back to the scene of the incident and interviewed three witnesses, Melissa Roberts, Marcella Cline, and James Harris.  (Follow-Up Report 3/24/10, at 9-10).  Every witness confirmed that Perry had a gun during the incident and that Plaintiff did not.  (*Id.*).  Melissa Roberts also stated that she witnessed a man in his late 20's (not Plaintiff) also holding a gun during the incident.  (*Id.*).  After collecting these witness statements, Defendant Dennis returned to the station, read Plaintiff his Miranda rights and took Plaintiff's statement.  (*Id.* at 10).  Plaintiff reiterated to Defendant Dennis that he never had a gun during the altercation but he did at one point have a cell phone in his hand.  (*Id.*).

Plaintiff was released that same day, March 24, 2010, at approximately 1:00 p.m.[5]  (Pl.'s Dep. at 50; Follow-Up Report, 3/24/10).  After he was released from jail, Plaintiff returned home to get ready to go to a 3:30 p.m. doctor's appointment. (Pl.'s Dep. at 50).  Upon leaving his house Plaintiff was confronted and attacked by a group of people including Perry, Richard, and Perry's significant other, Ben McClendon ("McClendon").  (*Id.* at 52-53).  Plaintiff testified that McClendon, Richard and another man were armed with aluminum baseball bats and Perry had a knife in her hand.  (*Id.*).  Plaintiff testified that his wife and daughter tried to help him by stopping the attack.  (*Id.* 54-55).  Plaintiff was severely beaten and eventually shot in the left leg during this second altercation.  (*Id.* at 55-56).

---

[5] The Follow-Up Report dated 3/24/10 indicates that Plaintiff was released "pending further investigation" but there is no dispute in this case that no charges were brought against Plaintiff. (*See* Follow-Up Report, 3/24/10).

Inkster police responded to this incident.  (Arrest Report 3/24/10, at 14).[6]  Upon arrival, the officers found Plaintiff shot and lying in his driveway.  (*Id*.).  Plaintiff told the responding officers that Perry had shot him.  (*Id*. at 14; Pl.'s Dep. at 25).  The responding officers arrested Perry, McClendon, and Dajon McReynolds for aggravated felony assault.  (*Id*. at 2).  Officers also seized a .380 magazine which was full, a box of .380 ammunition, a knife, and an open, but empty, gun case from Perry's car.  (*Id*.).  One witness, Melissa Robinson, identified Perry as holding a gun before Plaintiff was shot.  (Pl.'s Br., Ex. 7, Melissa Robinson's Statement at 1).  Plaintiff's daughter, Shangri Stevens, also identified Perry as the shooter and noted that McClendon was holding a gun.  (Pl.'s Br., Ex. 7, Shangri Steven's Statement at 1).   Plaintiff spent three days in the hospital for treatment of his injuries.  (Pl.'s Dep. at 55).

On January 13, 2012, Plaintiff filed this action against Defendants City of Inkster, Brian Dennis as well as Thomas Diaz, Shawn Kritzer, Tamika Lance, Camille Perry, Ben McClendon, Dajon McReynalds.  After failing to respond to this Court's order to show cause (Dkt. No. 4) this Court dismissed all Defendants for failure to prosecute except the current Defendants, City of Inkster and Brian Dennis.[7]  (Dkt. No. 5).

## II. LEGAL STANDARD

Defendants have moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure.  This rule provides that summary judgment "should be rendered if the

---

[6] The incident report for the second altercation was authored by Officer Tamika Lance who was dismissed without prejudice from this action.

[7] Plaintiff asserts that "[d]efault judgment has been entered against several Defendants for the assault and battery that Archer was subjected to that day...."  (Pl.'s Br. at 7).  Although not explained, it appears Plaintiff is referring to a default judgment entered in state court against some of the defendants who were previously dismissed in this action.

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of genuine issue of material fact." *Id.* at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a

showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### III. ANALYSIS

Plaintiff alleges that Defendants falsely arrested and imprisoned him in violation of state law. Plaintiff further claims that Defendants committed gross negligence in violation of state law. Finally, Plaintiff asserts Defendants violated 42 U.S.C. § 1983 under the "state created danger rule". Defendants argue that summary judgment is appropriate where Plaintiff cannot set forth genuine issues of material fact regarding any of his asserted claims.

### A.    False Arrest and False Imprisonment

To establish a claim for false imprisonment under Michigan law, a plaintiff must show: (1) actual confinement of another person, (2) intentionally performing the act of confining another person, (3) that the act of confining another was performed without legal justification, and (4) the victim was aware of her confinement. *Romanski v. Detroit Entmt, LLC*, 265 F. Supp. 2d 835, 846 (E.D. Mich. 2003) (citing *Moore v. City of Detroit*, 252 Mich. App. 384, 387 (2002)). Michigan courts have determined that a false arrest is just one type of false imprisonment, therefore, when a person is falsely arrested, he or she is always falsely

imprisoned. *See Moore*, 252 Mich. App. at 386-87. The elements to establish false arrest under Michigan law are: (1) an arrest, (2) of a person, (3) who is innocent of the charge on which he is arrested, (4) by the defendant or at his instigation, (5) without legal justification. *Romanski*, 265 F. Supp. 2d at 846 (citation omitted).

Therefore, under Michigan law "'[t]o prevail on a claim of false arrest or false imprisonment, a plaintiff must show that the arrest was not legal, i.e., *the arrest was not based on probable cause*. If the arrest was legal, there has not been a false arrest or a false imprisonment,' regardless of the possibility of conviction." *Hoover v. Walsh*, 682 F.3d 481, 501 (6th Cir. 2012) (emphasis added) (quoting *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2000)).

In the present case, Plaintiff has alleged that he was falsely arrested and falsely imprisoned by Defendants on March 23, 2010. Plaintiff contends that there is a genuine issue of material fact as to the false arrest claim because Defendants lacked probable cause to arrest him for the reason that "[e]very witness, with the exception of Camille Perry and her mother Betty, stated that Plaintiff did not have a gun." (Pl.'s Br. 11). For this assertion Plaintiff cites the witness statements of Lorenzo Stevens, Dennis Muhammad, and Plaintiff himself. Plaintiff further argues that there was no probable cause to imprison Plaintiff because "[a]ll witnesses confirmed that Archer had not performed any act that could conceivably be construed as a criminal act." (Pl.'s Br. at 13). Plaintiff does not refer to any specific evidence for this proposition.

Defendants argue that Plaintiff cannot meet his burden to show a genuine issue of material fact as to either claim because Defendants had probable cause to arrest him because witnesses told the police he had a gun and also because two guns were recovered from the scene.

The Michigan Court of Appeals has explained probable cause as follows:

Probable cause that a particular person has committed a crime "is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a caution person to the belief that the accused is guilty of the offense charged." *People v. Coutu* (on remand), 235 Mich. App. 695, 708 (1999), quoting *People v. Tower*, 215 Mich. App. 318, 320 (1996). Probable cause is not capable of being precisely defined; rather, it is a commonsense concept dealing with practical considerations of everyday life that must be viewed from the perspective of reasonable and prudent persons, not legal technicians. *Ornelas v. United States*, 517 U.S. 690, 695-96 (1996).

*Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 19 ( 2003). "Where the facts are undisputed, the determination [of] whether probable cause exists is a question of law for the court to decide." *Id*. at 18. The determination of whether probable cause exists "depends on the facts as the officer perceived them." *Walsh v. Taylor*, 263 Mich. App. 618, 629 n. 5 (citing *People v. Champion*, 452 Mich. 92, 115 (1996)); *see also People v. Coward*, 111 Mich. App. 55, 60 (Mich Ct. App. 1981) (holding that probable cause justifying a warrantless arrest must exist at the time of the arrest).

In the present case there are no facts in dispute surrounding the arrest and imprisonment of Plaintiff. The record is clear that Plaintiff and Dennis Muhammad represented to the officers that only Perry had a gun during the fight on March 23, 2010. (Arrest Report 3/23/10, at 1-2). However, the Arrest Report also details that the officers were advised that Plaintiff brandished a handgun and threatened Perry's son with it by Perry and Perry's mother, Betty Perry. (*Id*., at 1). Perry's son, Richard, also represented that he heard someone yell, "he has a gun" during the fight. (*Id*. at 1-2). Although Plaintiff argues that Perry and her mother's version of events constituted a "facially false allegation," Plaintiff has not explained how an officer who was not a witness to the events could divine that the Perrys' version of events was "facially false." Indeed, Plaintiff has cited no specific facts to support his claims of false arrest or false imprisonment.

9

Rather, Plaintiff merely opines that Defendants should have believed Plaintiff and Muhammad over Perry and her mother. Further, the Court notes that Plaintiff was released shortly after Defendant Dennis conducted additional witness interviews which corroborated Plaintiff's version of events. (*See* Follow-Up Report, 3/24/10; Pl.'s Ex. 1, Witness Statements all dated 3/24/10).

Plaintiff has failed to set forth any specific facts or any case law to support his proposition that Defendants lacked probable cause to arrest or imprison him. Therefore, the Court finds that there are no genuine issues of material fact as to whether probable cause existed. *See Laney v. Blue Cross Blue Shield of Mich*., No. 2366977, 2003 WL 1343284, at *2 (holding that the plaintiff "failed to provide any specific facts supporting a conclusion that there was no probable cause for his arrest" and therefore summary judgment was appropriate.).

In *Pardo v. Ewald*, No. 282821, 2009 WL 529636, *2 (Mich. Ct. App. Mar. 3, 2009), the Michigan Court of Appeals found that one person's accusation gave rise to a reasonable suspicion and that when coupled with additional information supporting the accusation the suspicion "was sufficiently strong to warrant the belief that plaintiff was guilty of the offense." In *Pardo*, the Michigan court noted that a corroborating statement from a third party lifted one person's accusation to probable cause. *Id*. Here, Defendant Dennis was confronted with a fight between two boys and the only witnesses were family members - and each family offered two different versions of events.[8]

Given the totality of the circumstances, including the lack of any facts supporting

---

[8] Defendants argue that the recovery of two guns from the scene weighs in favor of finding probable cause existed to arrest Plaintiff. However, this fact is not relevant to the issue of whether *Plaintiff* possessed or brandished a gun as both guns were recovered from Perry and nothing in the record indicates that Perry alleged that Plaintiff possessed either of her guns.

10

Plaintiff's argument, the pool of witnesses officers interviewed on March 23, 2010, and the facts

Defendants were aware of at the time of arresting both Plaintiff and Perry, the Court finds that

probable cause existed to arrest and imprison Plaintiff.  Therefore, the Court finds summary

judgment is appropriate on Plaintiff's claims of False Arrest and False Imprisonment.

**B.      Gross Negligence**

Plaintiff alleges the Defendants committed gross negligence under state law by releasing

Perry's guns back to her the same day she was arrested and released, March 23, 2010.  Plaintiff's

theory is that after the Defendants rearmed Perry, she went on to use one of these guns to shoot

Plaintiff during the second altercation on March 24, 2010.  Defendants argue that Plaintiff's

claim for gross negligence must fail because Perry's weapons were not released to her until

August 22, 2011 (more than a year after the second altercation took place) and Defendants were

not the proximate cause of Plaintiff's injuries.  (Defs.' Br. Ex. C, Chain of Custody).

Under Michigan's governmental immunity act, each officer (or employee of a

governmental agency) is immune from tort liability for injury to a person or damage to property

caused by that officer in the course of her employment while acting on behalf of a governmental

agency except where the conduct amounts to gross negligence that is the proximate cause of a

plaintiff's injury.  MICH. COMP. LAWS. § 691.1407(2)(c).  The statute defines "gross negligence"

as: "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury

results.  MICH. COMP. LAWS. § 691.1407(7)(a); *see Chelsea Inv. Grp. v. City of Chelsea*, 288

Mich. App. 239, 265 (2010).

First, the Court must address the fact that both Plaintiff's Complaint and Defendants'

motion appear to assume a claim for gross negligence is proper against the Defendant City of

Inkster under MICH. COMP. LAWS § 691.1407.  This is incorrect.  The statute states in relevant

11

part: "Except as otherwise provided in this act, <u>a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function</u>." MICH. COMP. LAWS § 691.1407(1) (emphasis added).  Exceptions to governmental immunity extend solely to the officers or employees of the governmental agencies, not the agencies themselves. *See Gracey v. Wayne County Clerk*, 213 Mich. App. 412, 420 (1995), overruled on other grounds by *Amer. Transmissions, Inc. v. Attorney General*, 454 Mich. 135, (1997); *see also Townes v. County of Wayne*, No. 09-10693, 2011 WL 1297116, * 4 (E.D. Mich. Apr. 5, 2011) (recognizing the same) reversed in part on other grounds 2011 WL 3839799 (E.D. Mich. Aug. 30, 2011).  Plaintiff has failed to argue or set forth any evidence that Defendant City of Inkster was not engaged in a governmental function when it allegedly returned the weapons to Perry and failed to set forth any other exception to immunity.  Therefore, Plaintiff's claim that Defendant City of Inkster was "grossly negligent" must be dismissed.

The Court now addresses Plaintiff's claim for gross negligence only against Defendant Dennis.  First, the Court notes that Plaintiff has not set forth any evidence that Defendant Dennis was the actual officer who gave Perry her guns back beyond a general allegation in his First Amended Complaint.  (Amend. Comp. ¶ 54).  Rather, the only evidence that Perry was given her firearms back comes from Plaintiff's testimony that he heard Officer Paul Martin (who is not a party to this action) state to Perry that he would be returning her guns.  (Pl.'s Dep. at 47).  However, even assuming that Defendant Dennis did rearm Perry (and assuming that Plaintiff could show there is a genuine issue of material fact regarding whether these same guns caused his injuries) Plaintiff's claim fails as a matter of law because Plaintiff cannot show that Defendant Dennis' actions were "the proximate cause" of his injuries.

In *Robinson v. City of Detroit*, 462 Mich. 439 (2000), the passengers in a car fleeing

12

from police caused an accident and the passengers thereafter sued the police officers in tort for their injuries. *Id*. at 444. One of the questions before the Michigan Supreme Court was whether the defendant officers enjoyed governmental immunity pursuant to MICH. COMP. LAWS § 691.1407 or whether their actions were grossly negligent. *Id*. at 458-63. The court examined the language of § 691.1407(c)(2) and explained: "[t]he Legislature's use of the definite article 'the' clearly evinces an intent to focus on one cause. The phrase 'the proximate cause' is best understood as meaning the one most immediate, efficient, and direct cause preceding an injury." *Id*. at 458-59. The court then reasoned that the defendant officers were immune from suit "because their pursuit of the fleeing vehicles was not, as a matter of law, 'the proximate cause' of the injuries sustained by plaintiffs. The one most immediate, efficient, and direct cause of the plaintiffs' injuries was the reckless conduct of the drivers of the fleeing vehicles." *Id*. at 462.

In the present case, the Court finds that Plaintiff's claim fails because Defendant Dennis' decision to release of the weapons (if that occurred) was not the proximate cause of Plaintiff's injuries (even if the weapons that were returned were used to shoot Plaintiff). Just as in *Robinson*, Defendant Dennis' release of the weapons was not the "most immediate, efficient, and direct cause of plaintiff's injuries". *Id*. Rather, the proximate cause of Plaintiff's injuries were Perry's actions (namely shooting a gun at Plaintiff). *See also*, *Jones v. Reynolds*, No. 250616, 2005 WL 782694, *4-5 (Mich. Ct. App. Apr. 7, 2005) (applying the holding in *Robinson* and finding that officers who did not stop a drag race but condoned and sanctioned the event by their actions were not the "the proximate cause" of an on-looker's death, rather, "the impact of the vehicle driven by Reynolds with decedent's body was" the proximate cause.). Therefore, where the alleged return of Perry's weapons cannot be held to be the sole cause of Plaintiff's injuries, summary judgment is appropriate on the claim of gross negligence.

13

**C.       State Created Danger, 42 U.S.C. § 1983**

Plaintiff also claims that Defendants' release of Perry's guns on March 23, 2010 constitutes a "state created danger" claim pursuant to 42 U.S.C. § 1983.  Defendants argue that summary judgment should be granted on this claim because the guns were not returned to Plaintiff until August 22, 2011 and could not have been used during the second altercation on March 24, 2010.

### 1.       Failure to set forth a Genuine Issue of Material Fact

Plaintiff argues a genuine issue of material fact exists regarding when the guns were returned to Perry because: (1) Plaintiff testified that he heard Officer Paul Martin state he was returning the weapons to Perry on March 23, 2010 (Pl. Dep. at 47), (2) the police found an ammunition box, an empty gun case, and a .380 magazine in Perry's car after the second altercation on March 24, 2010 (Arrest Report 3/24/10 at 15), and (3) there is an inconsistency in Defendants' chain of custody documents such that they cannot be conclusive as to the fact that the guns were returned in August 2011.

The Sixth Circuit has made clear that "[w]hen a motion for summary judgment is made and supported by competent evidence, the nonmovant may not rest on his or her pleadings, but must come forward with affidavits or other admissible evidence setting forth 'specific facts showing that there is a genuine issue for trial.'"  *Mourad v. Homeward Residential, Inc*. 517 Fed. App'x 360, 365-66 (6th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).  "Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact."  *Bailey v. Floyd County Bd. Of Educ*., 106 F.3d 135, 145 (6th Cir. 1997).  "[M]ere speculation, conjecture, or fantasy [is] insufficient to survive a motion for summary judgment."  *Clemente v. Vaslo*, 678 F.3d 482, 495

(6th Cir. 2012) (internal quotation omitted).  In the present action, the Court finds that Plaintiff has failed to come forward with competent evidence which shows there is a genuine issue for trial.

Plaintiff has failed to explain how the fact the police found an ammunition box, an empty gun case, and a full magazine in Perry's car on March 24, 2010 is probative or bears in any way on whether Perry was in possession of the previously seized Hi-Point or Bersa on March 24, 2010.[9]  Plaintiff has also failed to explain how or why Defendants' chain of custody documents contain "an inconsistency" such that they cannot be considered conclusive evidence regarding when the guns were returned to Perry.

At the hearing on this matter, Plaintiff argued for the first time that Defendants failed to turn over the chain of custody documents in a timely manner inferring that because of this delay Plaintiff was deprived of his ability to conduct discovery regarding these documents. Defendants' attorney represented that the documents were produced in June, 2013, the same day they were turned over to Defendants by the Inkster police department.  The Court notes, as it did at the hearing, that Plaintiff failed to file any motion in this Court seeking discovery or seeking to extend discovery based on the chain of custody documents.  Additionally, the Court notes that Plaintiff filed a motion to compel *other* discovery in July, 2013 after receiving those documents. (Dkt. No. 22).  Given these facts, the Court finds that Plaintiff has waived any argument based on the timeliness of discovery.

---

[9] The mere fact Perry  possessed paraphernalia related to her guns does not create a material issue of fact regarding whether the police gave her the seized weapons back. There is nothing on the record indicating that the police also seized an ammunition box, an empty gun case, or a full magazine along with Perry's two guns on March 23, 2010 such that finding some of these seized items would indicate that all of the items had been returned to her.

Plaintiff also failed to offer any theory or explanation regarding why the chain of custody entries are inconsistent when each chain of custody (including the chain of custody of a gun sized from Betty Perry's house on March 24, 2010) contains an entry indicating "To be Returned to Owner - Property Room" and then six to eight months later a notation: "Returned To Owner - No Longer in IPD Custody".  (Pl.'s Br. Ex. 14, at 1, 3, 6).  As Plaintiff has not set forth any evidence or even a theory regarding how the documents are inconsistent, the Court cannot manufacture the same on his behalf.

Therefore, the Court must now address whether Plaintiff's testimony that Officer Martin returned the guns to Perry can carry his burden at the summary judgment stage and establish that there is a triable issue of fact regarding whether Perry received her guns on March 23, 2010 and used one of those guns to shoot him on March 24, 2010.  Although Defendants fail to address the issue, the Court finds nothing in the record indicating that the gun used to shoot Plaintiff on March 24, 2010, was one of the guns that Perry allegedly was returned the day before.  In fact, the police recovered two *other* guns on March 24, 2010.  (Arrest Report 3/24/10, at 26).  The first gun was found under a mattress in the basement at Betty Perry's house and was registered to Miles Terrence Perry.  The other gun was also found in the basement in a black plastic bag and was described as a "black in color revolver".  (Arrest Report, 3/24/10, at 26).  There was no known owner associated with the second gun. (*Id*.).

Defendants argue that Plaintiff's testimony regarding Officer Paul Martin's comments is inadmissible hearsay and should not be considered.  However, pursuant to Fed. R. Evid. 801(d)(2), a statement "made by the party's agent or employee on a matter within the scope of that relationship and while it existed" offered against Defendants is not hearsay.  Here, it is likely that Plaintiff would argue that Officer Martin's statement that he was releasing and

16

rearming Perry would be a statement offered against Defendants and made by an employee on a matter within the scope of that relationship. The fact Plaintiff's testimony is admissible, however, does not create a triable issue of fact regarding whether Defendants returned Perry's guns to her and whether Perry actually used one of those guns on Defendant.

The Court finds that Plaintiff has failed to set forth any evidence that would create a genuine issue of material fact regarding whether Perry was returned her previously seized Bersa or Hi-Point guns on March 23, 2010 and whether Perry shot Plaintiff with one of those guns on March 24, 2010.

In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court held that a police officer was entitled to summary judgment on an excessive force claim despite the officer and the motorist setting forth conflicting testimony regarding the events at issue. *Scott*, 550 U.S. at 386. In reversing the lower court's finding, the Supreme Court relied upon a videotape that captured the events to find that the motorist's version of the events were so discredited by the record that a jury would not have believed him. *Id*. at 380. The Supreme Court stated, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*.

In *Coble v. City of Whitehouse, Tenn*., 634 F.3d 865 (6th Cir. 2011), the Sixth Circuit rejected a party's argument that *Scott* and its progeny must be limited to cases where the events were captured on a videotape, noting that "[t]he *Scott* opinion does not focus on the characteristics of a videotape, but on 'the record.'" *Id*. at 869 (citation to *Scott* opinion omitted). In finding that it was proper for the lower court to consider an audio recording, the Sixth Circuit went on to reason that "courts routinely look to *Scott* for guidance in determining whether the

17

non-moving party's version of the events is so blatantly contradicted by objective evidence in the record that it fails to create a genuine issue of material fact for trial, even in the absence of a videotapes." *Id.* (citing *White v. Georgia*, 380 Fed App'x 796, 798 (11th Cir. 2010) (holding a plaintiff's version of events is discredited by medical records proving she was not shot); *Carter v. City of Wyoming,* 294 Fed. App'x 990, 992 (6th Cir. 2008) (holding an MRI did not "blatantly contradict" a witness' statement); *Cooper v. City of Rockford*, No. 06-50124, 2010 WL 3034181, at *2 n. 3 (N.D. Ill. Aug. 3, 2010) (discounting a witness statement because an autopsy report showed the bullet entered the victim from the front not the back); and *Shreve v. Jessamine Cnty. Fiscal Ct.*, 453 681, 688 (6th Cir. 2006) ("suggesting, before *Scott* was decided, that it would be proper to discount the plaintiff's evidence where the defendants' evidence was 'so objectively compelling' that no reasonable juror could believe the plaintiff").[10]

In the instant case, the Court finds that the record as a whole blatantly contradicts Plaintiff's version of events such that he fails to create a genuine issue of material fact regarding whether Defendants returned the guns to Perry and whether Perry used one of those guns to shoot Plaintiff. Defendants have set forth objective evidence that the guns were not returned to Perry until 2011. There is also undisputed evidence that two different guns were present and recovered from Betty Perry's house on March 24, 2010 after Plaintiff was shot. Plaintiff has offered no evidence connecting the guns seized on March 23, 2010 to his shooting on March 24, 2010 or any evidence to contradict or discredit Defendants' evidence that the guns were returned in 2011. Therefore, Defendants' objective evidence blatantly contradicts Plaintiff's version of

---

[10] In *Shreve*, the court reversed a lower court and held that summary judgment was not proper when plaintiff had sworn to a version of events which supported a finding of excessive force.

events such that no reasonable jury could accept it and summary judgment is proper.

## 2.    State Created Danger Claim Fails as a Matter of Law

Even assuming Plaintiff did create a genuine issue of material fact regarding whether Defendants gave Perry her guns back on March 23, 2010 and one of those same guns was used by Perry to shoot Plaintiff the next day, Plaintiff's state created danger claim fails as a matter of law.

In order to make a claim pursuant to 42 U.S.C. § 1983, a plaintiff must establish a violation of an existing constitutional right by a person acting under color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Waters v. City of Morristown*, 242 F.3d 353, 358-59 (6th Cir. 2001).  Plaintiff appears to argue that Defendants violated Plaintiff's constitutional right to substantive due process by releasing Perry's guns back to her on March 23, 2010.

In *DeShaney v. Winnebago Cnty Dept of Soc. Servs*., 489 U.S. 189 (1989), the Supreme Court explained that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty and property of its citizens against invasion by private actors," and further that "a State's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause."  *Id*. at 195, 197.  In *DeShaney*, the Supreme Court also recognized an exception to this general rule and held: "[w]hen the State has so restrained the liberty of the individual that it renders him unable to care for himself, the State has a special relationship with the individual and thus an affirmative duty to protect him."  *Jones v. Reynolds*, 438 F.3d 685, 690 (6th Cir. 2006) (citing *DeShaney*, 489 U.S. at 201).

The Sixth Circuit also recognized a second exception to the general prohibition against holding public officials constitutionally responsible for private acts of violence as set forth in

*DeShaney*.  *Id*.  In *Jones*, the Sixth Circuit explained this second exception as follows:

> Relying on the following language from *Deshaney* – "[w]hile the State may have
> been aware of the dangers that Joshua faced in the free world, it played no part in
> their creation, nor did it do anything to render him any more vulnerable to them,"
> - we have held that when the State "cause[s] or greatly increase[s] the risk of
> harm to its citizens ... through its own affirmative acts," it has established a
> "special danger" and a duty to protect its citizens from that risk.

*Id*.  (internal citations omitted).  To bring an action under this "state created danger" rule, a

plaintiff must show:

> (1) an affirmative act by the state which either created or increased the risk that
> the plaintiff would be exposed to an act of violence by a third party; (2) a special
> danger to the plaintiff wherein the state's actions placed the plaintiff specifically
> at risk, as distinguished from a risk, as distinguished from a risk that affects the
> public at large; and (3) the state knew or should have known that its actions
> specifically endangered the plaintiff.

*Id*. (quoting *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003)).  This theory

has been explained as "[i]f the state puts a man in a position of danger from private persons and

then fails to protect him, it will not be heard to say that its role was merely passive; it is as much

an active tortfeasor as if it had thrown him into a snake pit."  *Kallstrom v. City of Columbus*, 136

F.3d 1055, 1066 (6th Cir. 1998) (citing *Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir. 1982)).

The Sixth Circuit has noted that this theory presents a "demanding standard for

constitutional liability."  *Jones*, 438 F.3d at 691 (quoting *Sargi v. Kent City Bd. of Educ.*, 70 F.3d

907, 913 (6th Cir. 1995)).  As explained below, the Court finds that Plaintiff's claim fails to meet

this demanding standard.

a.      Special Danger

The Sixth Circuit has noted that "in the only cases where we have recognized a 'state

created danger,' the government could have specified whom it was putting at risk, nearly to the

point of naming the possible victim or victims."  *Jones*, 438 F.3d at 696 (citing *Caldwell v. City*

20

*of Louisville*, 120 Fed. App'x. 566, 573 (6th Cir. 2004)).

Plaintiff argues that "[a] reasonable person would have realized due to prior incidents between Camille [Perry] and Plaintiff, that Plaintiff would have his personal security and bodily integrity in danger when the Defendants released the guns.  This special risk existed to Plaintiff and not the general public."  (Pl.'s Br. at 16).  These conclusory statements do not, however, explain what prior incidents occurred between Perry and Plaintiff such that Plaintiff was subject to a "special risk" when Perry was returned her guns.  Indeed the only evidence in the record of issues between Plaintiff and Perry relate to the March 23, 2010 incident between Plaintiff's grandson and Perry's son, not between Plaintiff and Perry personally.  Further, this incident happened the same day Perry's guns were seized and allegedly returned to her.  Plaintiff has not set forth any evidence indicating that Plaintiff and Perry had a history of violence predating March 23, 2010 or that Perry had ever threatened Plaintiff with bodily harm on or before March 23, 2010.  Indeed, Plaintiff and Perry's entire interaction on March 23, 2010 was described by Plaintiff as him questioning whether she "was crazy" after she shot her gun into the air and her responding that the "best thing you can do is to get out of my yard."  (*See* Pl.'s Dep. at 22-23).  There is nothing in the record indicating that Perry aimed the gun at Plaintiff or ever threatened him in any way on March 23, 2010.

Finally, Plaintiff cites generally to *Kallstrom v. City of Columbus*, 136 F.3d 1055 (6th Cir. 1998) for the proposition that a "serious risk to a plaintiff's personal security by a police department has been enough to establish a violation of the plaintiff's right to personal security and bodily integrity."  (Pl.'s Br. at 16).  Plaintiff's reliance on *Kallstrom* is misplaced.  In *Kallstrom*, undercover police officers brought suit against a city when the city disclosed personnel and pre-employment files to defense counsel in a drug conspiracy case involving the

21

prosecution of 41 members of a violent gang in which those undercover officers were witnesses. *Kallstrom*, 136 F.3d at 1059.  The disclosed files included the undercover officers' addresses, phone numbers, driver licenses, social security numbers, bank account information (including balances) and officers' families' names, addresses, and phone numbers.  *Id*.  This information was then passed on from the defense counsel to some of the defendants in that criminal case.  *Id*. The Sixth Circuit held that the disclosure of this information "placed the personal safety of the officers and their family members, as distinguished from the public at large, in serious jeopardy." *Id*. at 1067.

The instant case is easily distinguishable from the facts in *Kallstrom*.  The *Kallstrom* plaintiffs were placed specifically at risk because their personal information was released to violent individuals with reason and motivation to seek vengeance against those same officers or their loved ones.  In the instant case, Plaintiff has failed to show that in giving Perry's guns back to her a "special risk" or danger was created as to Plaintiff as distinguishable from the risk the general public faced when Perry was allegedly rearmed.

b.      Knowledge of Danger

Plaintiff's three sentence argument that Defendants were aware of this special danger fails for the same reasons set forth above.  The mere fact that Defendants were aware of the confrontation on March 23, 2010 does not equate to the Defendants possessing actual knowledge that rearming Perry would create a special danger to Plaintiff – who had never been threatened by Perry.  Plaintiff fails to cite to any facts to support his argument that Defendants were aware that such a special danger existed on March 23, 2010.

For all these reasons, Plaintiff's state created danger claim fails and summary judgment is proper.

22

## IV. CONCLUSION

Therefore, the Court GRANTS Defendants' Motion for Summary Judgment (Dkt. No. 19) and dismisses Plaintiff's claims with prejudice.

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  February 26, 2014

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 26, 2014.

s/Deborah Tofil
Case Manager
